IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| THOMAS WILLIAM MORGAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 1:24-cv-303 |
| MARION COUNTY GOVERNMENT, LINDA MASON, RONNIE "BO" BURNETT, and DALE WINTERS, | ) **JURY DEMAND** |
| Defendants. | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY MOTION TO DISMISS**

Defendants, pursuant to Rules 12(b)(6) and 56 of the *Federal Rules of Civil Procedure*, file with the Court their Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment or Alternatively Motion to Dismiss as follows:

### a. Lack of Monell Liability

A plaintiff cannot recover against a municipality "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, liability lies only where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* A plaintiff may demonstrate *Monell* liability in one of the following ways: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)(citation omitted).

The record does not include evidence that contradicts the testimony that Mason has a limited role as a commissioner and as former commission chair. See Docs. 39-10 and 39-11. The commission acts through its collective voting as it relates to county matters. *Id.* There was no vote or other action of the commission for Marion County at issue. Rather, the events giving rise to this litigation relate to the exchanges on January 29 and June 24, 2024. Of course, it is claimed in Defendants' motion there was no misconduct or wrongdoing by Mason or any other Defendant and, as such, there can be no recovery against Marion County.

For official ratification, Plaintiff must "demonstrat[e] that an official with final decision-making authority ratified illegal actions." *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 270 (S.D. Ohio 2021)(citing *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020)). "An official acting with the final decision-making authority may ratify the unconstitutional acts of its employees in two ways": (1) "through 'affirmative approval of a particular decision made by a subordinate[,]" *Id.* at 270–71 (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 650 (6th Cir. 1993), or (2) "by 'failing to meaningfully investigate and punish allegations of unconstitutional conduct[,]'" *Id.* at 271 (citing *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020)). The record does not include evidence to support the "affirmative approval of a particular decision made by a subordinate." The record does not even support that Mason, as an elected official, not county employee, is a subordinate.

For a single-act ratification theory, a plaintiff "must demonstrate that a 'deliberate choice to follow a course of action is made from among various alternatives by the official.. responsible for establishing final policy with respect to the subject matter in question.'" *Burgess*, 735 F.3d at 479 (quoting *Pembaur*, 475 U.S. at 483). The course of action chosen or ratified by the policymaker "must be shown to be the moving force behind or cause of the plaintiff's harm." *Id.* (citing *Pembaur*, 475 U.S. at 484–85). "Whether an individual is a final policymaker for

purposes of § 1983 liability is a question of state or local law, and a showing of policymaking authority typically requires specific evidence that the official's decisions were not subject to review or that the official could set policy related to broad goals." *Tlapanco v. Elges*, 969 F.3d 638, 658 (6th Cir. 2020). Under Tenn. Code Ann. § 5-5-103, the chair of the county legislative body (county commission) is primarily a presiding officer, and the election of the chair does not confer additional powers beyond those provided by law. The statute also allows the chair to designate another member to act in their place on boards or commissions, with the designee exercising the same powers as the chair in that capacity. Tenn. Code Ann. § 5-5-103. However, the chair's role as a policymaker would depend on whether the chair's actions represent official county policy.

The record does not support single-act ratification under the rigors of the law as discussed above. Alternatively, Plaintiff has failed to properly plead the basis supporting his *Monell* theories such that the same must be dismissed for failure to state a claim under Rule 12 of the *Federal Rules of Civil Procedure*.

Failure to investigate requires a clear and persistent patter of violations in earlier instances. *Hart v. Michigan*, 138 F.4th 409, 425 (6th Cir. 2025). The record includes no such evidence. And therefore failure to investigate is not applicable.

Deliberate indifference is an essential element for *Monell* liability via a claim of lack of training. To establish municipal liability under a failure-to-train theory, "a plaintiff must show: '(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023). For deliberate indifference, a plaintiff must demonstrate either (1) a "pattern of similar constitutional violations by untrained employees" or (2) "a single violation of federal rights,

accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738–39 (6th Cir. 2015) (internal quotation marks and citations omitted). There is no deliberate indifference as there is no evidence of a pattern of similar constitutional violations by untrained employees or a single violation accompanied by a showing that Marion County failed to train its employees to handle *recurring* situations presenting an obvious potential for constitutional violation as required above.

### b. Qualified and legislative immunity require dismissal of case.

Defendant Mason's, Winters,' and Burnett's rely on the defense of qualified immunity as to all of Plaintiff's alleged constitutional violations and summary judgment must be granted as to all such claims because the core facts relating to qualified immunity are the same. Defendants have not waived this argument.

Qualified immunity is not a defense to liability. Instead, the doctrine, when applicable, precludes suit entirely. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity provided that the defense has been raised. *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021). If plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, she will have failed to carry her burden. Moreover, to satisfy the second prong of the standard, plaintiff must show that the right was clearly established in a "particularized sense," such that a reasonable officer confronted with the same situation would have known that using deadly force would violate that right. *Chappell v. City Of Cleveland,* 585 F.3d 901, 907 (6th Cir.2009) (citations omitted). "A clearly established constitutional right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)(citation and internal quotation marks omitted). To do so, "existing precedent must

have placed the statutory or constitutional question beyond debate" regarding the conduct in the specific context of the case. *Id.*

It would not have been clear to every reasonable official and beyond debate as required by applicable law. Plaintiff concedes he was addressing matters pertaining to infrastructure funding and commission spending a building a road where no homes exist. Doc. 49, Page ID#422. The discussion regarding that road with the commission, Pull Tight Road, related to criminal activity, not commission spending and infrastructure issues. Plaintiff further engages in an argument with Defendant Mason regarding her conduct earlier. Plaintiff's conduct and addressing matters outside the agenda does not clearly establish a constitutional right under the First Amendment to the extent that Mason's request for Plaintiff to be removed from the meeting based on his conduct during the same would not make it clear to every reasonable official and beyond debate that Plaintiff had a clearly established right under the First Amendment that was being violated by Defendants.

In addition, Plaintiff was argumentative during the January 29th meeting and there was concern of public safety as it relates to matters escalating. See Doc. 51 PageID #: 643. Therefore, the evidence does not support that it would have been clear to every reasonable officer that removing Plaintiff under the particularized facts and circumstances of this case as occurred was in violation of the constitution. This analysis and the application of qualified immunity is to all claims by Plaintiff made and raised under the constitution including his First (speech, assembly, etc.), Fourth, and Fourteenth Amendment claims.

Furthermore, and as it relates to Mason in her individual capacity, Plaintiff's claims are barred by legislative/absolute immunity. *Biggs-Leavy v. Lewis*, 2025 LX 280942; 2025 WL 451369 (6th Cir. Feb. 10, 2025). See Defendants' Answer, Doc. 12, PageID#: 75, Ninth Defense.

In *Biggs-Leavy,* the plaintiff was removed from a city council meeting by the defendant council chair, Lewis, based on comments and activity by the plaintiff during the public comments

portion of the meeting for being unruly. *Id.* at *1-2. The plaintiff ultimately sued the defendant for violation of the First Amendment and applicable state law. *Id.*

On appeal, the court held that to the extent the plaintiff seeks to hold the defendant council chair liable in her individual capacity, "absolute immunity forecloses those claims." *Id.* at *4. "[I]t is well understood that a state or local legislator is immune from suit under § 1983 for 'legitimate legislative activity.'" *Id.* See also, *Tenney v. Brandhove,* 341 U.S. 367, 377 (1951) ("[L]egislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to …a trial…")

The plaintiff argued that the court must determine whether the defendant's act, which was removal of the plaintiff for the reason of being disruptive and in violation of council rule, was legitimate and therefore requires inquiry into the defendant's motive or intent. *Id.* The court, rejected that argument and held that "[T]he rule is otherwise. When deciding if an action qualifies as legislative, we look only to "the nature of the act, rather than [to] the motive or intent of the official performing it.'" *Id.* The court extended that analysis by stating that any "any claim of an unworthy purpose does not destroy the privilege." *Id.; Tenney* 341 U.S. at 377. Therefore, Mason has immunity individually.

### c. Tenn. Code Ann. § 8-8-302.

Defendants respectfully submit that they addressed Plaintiff's claims under Tenn. Code Ann. § 8-8-302 by adopting the arguments raised and made in their memorandum to the extent no additional argument was necessary as that would simply be re-stating prior argument. Tenn. Code Ann. § 8-8-302(a) permits a plaintiff to "recover from a governmental entity for the intentional misconduct of a deputy under this statute" if "the misconduct occurred while the deputy was acting by virtue of or under color of his office." *Currie v. Haywood Cnty.*, No. W2010- 00453-COA-R3-

CV, 2011 WL 826805, at *3 (Tenn. Ct. App. Mar. 10, 2011) (citation omitted). Defendants contend there was no intentional misconduct of a deputy and further that Winters was not acting in an official capacity or under color of his office regarding the January 29, 2024 meeting. As such, there would be no recovery permissible under this state law.

To the extent, however, that the Court is not persuaded by such arguments, then Defendant Marion County requests that the Court apply and take notice of Tenn. Code Ann. § 8-8-303(a), which provides that "The governmental immunity of the county in which the sheriff serves is waived for purposes of § 8-8-302, but to an extent not in excess of the minimum amount required for a surety bond applicable to that county's sheriff pursuant to § 8-8-103." Tenn. Code Ann. § 8-8-103 requires a minimum bond of $100,000.00 and, therefore to the extent § 8-8-302 is applicable, Marion County's liability cannot exceed $100,000.00.

### d. January 29, 2024 and June 24, 2024 meetings and lack of First Amendment violations of any nature.

Plaintiff raises issues in his response being limited to agenda topics during his appearance at the January 20th meeting, and separately time limitations for presentations. Plaintiff's argument belies his own testimony. More particularly, Plaintiff makes no complaints regarding being limited to addressing agenda topics during the public comment portion of the meeting. See Docs 39-1 and 39-2(A-ii). Yet, in his memorandum, Plaintiff attempts to raise this issue as some basis for recovery and/or creation of a fact question. There is also no claim of violation based on time limitations. See Plaintiff's Complaint, Doc. 1.

Plaintiff also mischaracterizes and misrepresents Defendants' argument regarding the exchange between Plaintiff and Mason as stated in his preliminary statement. Doc. 51, Page ID 414-415. Defendants show that the audio of the exchange between Mason and Plaintiff, not tone or other such matters, establish that as it relates to the January 29th meeting, Plaintiff was outside of the agenda topics claimed in this matter and therefore it was reasonable for him not to be

permitted to continue as he did. There is no "reasonable interpretation" being requested and no "after-the-fact rationalizations" claimed. Mason stated clearly in the audio and in her deposition testimony the basis for her actions and even stated to Plaintiff that she was trying to understand what he was discussing. Such testimony was previously filed by Defendants. Plaintiff wrongfully states in his memorandum that video evidence may be reasonably interpreted more than one way. It is not just what is shown on the video, it is what is heard and what the parties testified to under oath.

Plaintiff's memorandum [Doc. 51 Page ID#:640; timestamp 1:50:55] contains an admission and acknowledgment that Plaintiff was not addressing agenda topics during the January 29th meeting. Plaintiff states that he began addressing infrastructure funding issues and spending on a road with no homes. Plaintiff admitted in his deposition as pointed out in Defendants' memorandum that the minutes of the meeting accurately reflected that these were not the topics discussed regarding Pull Tight Road. The issues pertaining to the road related to criminal activity, including guns and drugs.

Plaintiff's contention that because a road is on the agenda and therefore any issue regarding the road may be discussed is not correct. To do so would permit unlimited discussion to the extent that no orderly conduct of meetings could reasonably occur. The topic for the roads that were discussed during the January 29th meeting are clearly contained within the minutes of that meeting. Plaintiff now in his memorandum requests that there is a question of reasonable interpretation of the video, which would contradict his own testimony. Plaintiff's cited cases in support of that contention, specifically *Guptill v. City of Chattanooga,* No. 24-5688, 2025 WL 3295395, at *3 (6th Cir. Nov. 26, 2025) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017), and *Scott v. Harris,* 550 U.S. 372 (2007), relate to video showing use of force, not the spoken word, and how the images showing the force could be interpreted differently. Plaintiff's cases therefore do not

address at all the purpose of the video, more particularly, the audio and ignores Plaintiff's testimony cited by Defendants in support.

Similarly, Plaintiff curiously states that the agendas for commission meetings do not appear to be *"determined"* by anyone prior to the meeting. Plaintiff ignores the Affidavit of County Mayor David Jackson, which clearly explains the process for the preparation of the meeting agendas. Plaintiff's reference to this is confusing because there is no complaint in this case by Plaintiff that his rights were infringed or that he incurred damages whatsoever based on the manner the agenda for commission meetings is prepared. The same holds true of Plaintiff's reference to attendees at commission meetings not having prior notice that public comments were limited to agenda matters. Again, Plaintiff makes no complaint in this respect.

Plaintiff further misstates Defendants' reliance on *Youkhanna v. City of Sterling Heights*, 934 F.3d 508 (6th Cir. 2019). *Youkhanna* is relied on by Defendants in that it confirms the Sixth Circuit permits reasonable restrictions in county commission meetings based on a limited forum analysis. More specifically, *Youkhanna* permits limitations in speech during the public comments portion of county meetings, which is directly applicable to the January 29th meeting.

Regarding the June 24, 2024 meeting, the record does not support that Plaintiff had his right to speech, assembly, or any other right under the First Amendment violated. Plaintiff acknowledges on PageID#s: 646-648 that he presented to the commission, and his testimony previously cited and filed by Defendants establishes he made his presentation in full.

e. **Plaintiff's claim for recovery for civil conspiracy must be dismissed.**

Civil conspiracy claims under § 1983 must be pled with some degree of specificity. *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987). Plaintiff's Complaint fails to plead with specificity the facts supporting this claim for recovery and as such the same must be dismissed

This is not a case in which there were ongoing occurrences or event upon which Plaintiff relies in arguing the existence of circumstantial evidence of a civil conspiracy but instead an in-the-moment request for Plaintiff to be removed. In *Weberg v. Franks,* 229 F.3d 514 (6th Cir. 2000), cited by Plaintiff, the court engaged in an extended discussion of facts, circumstances, and actions of individual defendants upon which it could be inferred that they were engaging in race discrimination including that Defendant Franks engaged in an "abnormal and deceitful interjection" into an investigation from which it could be inferred that he had an anti-white animus. *Id.* at 527. The plaintiff in *Weberg* further presented circumstantial evidence of anti-white animus by other defendants that addressed the gravamen of the claims by the plaintiff. *Id.* at 528.

Plaintiff here though presents no evidence sufficient to support a claim that Burnett, Winters, and Mason engaged in a plan, tacit or express, to discriminate against Plaintiff for the content of his speech. While Plaintiff contends that Mason precluded Plaintiff's speech because of the content, there is no evidence in that respect as it relates to Burnett or Winters. Mason individually is further entitled to absolute immunity in this respect as discussed above.

It is necessary that evidence be provided Mason, Burnett, and Winters each knew of the conspiracy, associated themselves with the conspiracy, and knowingly contributed his/her efforts in furtherance of the civil conspiracy. *Crawford v. Geiger*, 996 F. Supp. 2d 603, 618 (N.D. Ohio 2014); *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). *Crawford* recognizes the "relatively strict" pleading standard relating to civil conspiracy, which is not met here. *Id.* at 618. See also, *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). The record before the Court does not support the evidentiary requirement set forth above and Plaintiff's complaint fails to properly plead the elements and facts supporting this claim. Marion County relies on its *Monell* arguments set forth in its original memorandum and as set forth above in support of summary judgment on this issue as to policy or custom.

**WHEREFORE,** Defendants pray that their Motion for Summary Judgment or in the Alternative Motion to Dismiss be granted.

Respectfully submitted,

**SPICER RUDSTROM, PLLC**

By: /s/ B. Thomas Hickey, Jr.
B. Thomas Hickey, Jr. (BPR #019105)
*Attorney for Defendants*
537 Market Street, Suite 203
Chattanooga, TN 37402-1241
Telephone: (423) 756-0262
Facsimile: (423) 756-8489
thickey@spicerfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2025, I electronically filed this document along with any exhibits with the Clerk of the Court using CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

Robin Ruben Flores
4110-A Brainerd Road
Chattanooga, TN 37411

**SPICER RUDSTROM, PLLC**

By: /s/ B. Thomas Hickey, Jr.
B. Thomas Hickey, Jr.